(78 Misc. Rep. 528.)

## PEOPLE v. SHARP.

(Supreme Court, Trial Term, Monroe County.    December, 1912.)

1. WITNESSES (§ 27*)—FEES—CRIMINAL PROSECUTIONS.

Under Code Cr. Proc. § 616, as amended by Laws 1895, c. 98, witnesses for the prosecution are entitled to the same fees and mileage as witnesses in a civil action in the same court.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 56–64; Dec. Dig. § 27.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WITNESSES (§ 27*)—FEES—CRIMINAL PROSECUTIONS.

Where a witness was required, under Code Cr. Proc. 618b, to either deposit $500 or enter into a recognizance to insure his appearance as a witness on trial of a defendant charged with murder, and, being unable to comply with either requirement, was detained in the county jail for about five months, when, after having testified, he was discharged, his application for an order for payment to him of witness fees at 50 cents a day for the time he was so detained must be denied, as he is entitled only to fees for the days he was in actual attendance on the trial.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 56–64; Dec. Dig. § 27.*]

Nelson Sharp was prosecuted for murder in the first degree. Application by John Hogland for an order directing payment to him by the county treasurer of Monroe county of witness fees. Motion denied.

Frederick C. Wiedman, of Rochester (A. N. Jones, of Rochester, of counsel), for petitioner.

John W. Barrett, Dist. Atty., of Webster, opposed.

SAWYER, J. The above-named defendant was arrested on the 8th day of May, 1912, charged with murder in the first degree. He was thereafter indicted upon that charge by a grand jury of Monroe county, and upon trial was convicted thereof in the Supreme Court of that county. John Hogland, this petitioner, was at such trial a necessary and material witness, and testified thereat, for the people.

On June 21, 1912, proceedings under section 618b of the Code of Criminal Procedure were instituted by the district attorney of said county in pursuance of which petitioner was brought before a judge of a court of record, by whom he was required to either deposit the sum of $500 in cash, or enter into a recognizance with suitable sureties in the sum of $1,000 to insure his appearance as such witness upon the defendant's trial. He was unable to comply with either requirement, and was thereupon forthwith committed to the county jail of the county of Monroe, where he was detained until the 15th day of November following, when, after having testified upon such trial, he was discharged. He now applies for an order directing the payment to him by the county treasurer of Monroe county of witness fees, at the rate of 50 cents per day for the time he was so restrained, amounting to $75.50.

[1] However equitable his claim may seem, it of course cannot be allowed, in the absence of statutory warrant therefor. The only authority for the payment of the people's witnesses upon a criminal trial is contained in section 616 of the Code of Criminal Procedure. Prior to 1895 that section provided that a person who had attended a trial as a witness in behalf of the people pursuant to a subpœna or an undertaking, where it was made to appear to the court that he had come from a place out of the county, or was poor, might receive *such reasonable sum as the court or judge might direct*. All other persons, whose testimony was demanded by the people in criminal trials, were

required to attend and testify without any compensation whatsoever, and this was true whether such attendance was in pursuance of a subpœna or of an undertaking, and, inferentially, was equally true where commitment had been had in the cases then permitted by Code of Criminal Procedure, §§ 215, 216, 218. In such, as in other cases, payment was limited to those who were either poor or had come from a place without the county.

By chapter 98 of the Laws of 1895, section 616 was amended so as to provide that all witnesses in behalf of the people in a criminal action in a court of record should be entitled to the same fees and mileage as a witness in a civil action in the same court. By this amendment the phraseology of the section was entirely changed, and the law altered in two particulars: First. It did away with the limitation of payment only to witnesses who were either poor or foreign. Second. It repealed the discretionary power of the court to direct the payment of such sum as might to it seem reasonable.

Under the section prior to its amendment the court, unquestionably, had authority to take into consideration all the circumstances surrounding the attendance of a poor or a foreign witness, and if he had been detained in custody because of inability to procure a required undertaking that would properly have been a factor in determining the amount of compensation. Since the amendment of 1895, no such discretionary power is vested in the court. It can only order such payment as is directed by the section as it now stands, namely, the same fees and mileage as a witness is entitled to in a civil action in the same court. Those are plainly specified in section 3318 of the Code of Civil Procedure, which provides that:

"A witness * * * attending before a court of record * * * is entitled * * * to fifty cents for each day's attendance."

This contemplates and limits payment for such days only as the witness is in actual attendance at court, and, in embodying its provisions in the Code of Criminal Procedure, the Legislature, having made no extension thereof, and having expressly repealed the former discretionary power, evidently intended no payment should be made except for time necessarily spent at court.

[2] It was suggested by counsel upon the argument that the enforced detention of this petitioner from his commitment to the time of his actual presence in court should be held as a constructive attendance upon court. Two sufficient answers to this proposition at once suggest themselves: First. Section 616, supra, like all other statutes, must be strictly construed. Second. During a considerable portion of the time following petitioner's commitment the term at which this defendant was tried was not in session, and he cannot well be said to have been, even constructively, in attendance upon a term which did not exist, nor at a trial the time of which had not been determined upon.

The only authority upon the subject to which my attention has been called is that of People ex rel. Troy v. Pettit, 19 Misc. Rep. 280, 44 N. Y. Supp. 256. The commitment there under scrutiny was made under section 215 of the Code of Criminal Procedure, which materially

differs from section 618b, and the decision was based largely upon the proposition that the requirement from the witness of an undertaking *with sureties* was unauthorized and that his release could have been at any time procured by a writ of habeas corpus. The case is, however, a direct authority against petitioner's doctrine of constructive attendance; the learned justice assigning among other reasons for not granting the relief sought that:

"During most of the time that the relator was confined, neither the Court of Sessions nor the Supreme Court, in which the trial was had, was in session."

My conclusion is that petitioner, having attended upon the trial of Sharp from Monday, November 11, 1912, to Friday, November 15, 1912, both days inclusive, is entitled to payment therefor at the rate of 50 cents per day, and that, other than this, there is no authority vested in the court to direct. I have reached this conclusion with much reluctance. Petitioner is a laboring man, and apparently an honest and industrious citizen. Because of his misfortune in witnessing this homicide and certain conditions for which he now seems not to have been at fault he was, without warning, taken from employment which enabled him to comfortably support himself and incarcerated for practically five months. He was then released, only to find himself without either employment or money, and at a time of year when it is even forbidden to turn a criminal convict loose to shift for himself. If this be the law, and I think it is, we are more considerate of the welfare of evil-doers than of those whose only offense is their unfortunate ability to serve the state.

In justice and equity this man should be compensated. It is not within the power of the court to do this. The remedy for such hardships must come from the Legislature.

Motion denied, with costs.